## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **THERESA LOBELLO**, individually, and on behalf of others similarly situated, | : |
| | : |
| | : Case No: |
| | : |
| | : Hon. |
| Plaintiff, | : |
| | : **COLLECTIVE AND** |
| v. | : **CLASS ACTION COMPLAINT** |
| | : **WITH JURY DEMAND** |
| **HSNi, LLC**, a limited liability corporation, | : |
| | : |
| | : |
| Defendant. | : |

Plaintiff, Theresa LoBello ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, HSNi, LLC ("Defendant"), and states as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and

common law.

2.      According to Defendant's website, "HSN is not just a retailer; it's a community, a stage for innovation, and a purveyor of quality and convenience. It's a shopping network that prioritizes customer satisfaction, celebrates variety, and makes shopping not just a transaction but a truly engaging and enjoyable experience."[1] Defendant claims "At HSN, each call or chat is handled promptly and with the utmost care. With various channels to reach out, including phone, email, or live chat, you can pick your preferred mode of communication and expect the same high level of service."

3.      In providing the aforementioned services, Defendant employed customer service representatives ("CSRs") in its 24/7 brick and mortar call centers and in remote call center settings across the United States. Defendant heavily relied on CSRs to field inbound customer calls and respond and/or troubleshoot customer inquiries and problems.

4.      Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service to HSNi customers.

---

[1] *See* https://hsn.us.com/ (last visited Dec. 10, 2023).

5.      Defendant employed Plaintiff as an hourly call center employee with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9.      Defendant violated the FLSA and common law by systematically

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf* (last visited Dec. 10, 2023).

failing to compensate its CSRs for work tasks completed before their scheduled shifts when they are not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime and in non-overtime workweeks, for regular hours.

10.    More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems and logging into various computer programs and software prior to clocking into Defendant's timekeeping system, each day.

11.    In addition to Plaintiff's off-the-clock work, Defendant failed to compensate Plaintiff (and its other CSRs) at the appropriate overtime rate using the FLSA's "regular rate" calculation.   More specifically, Defendant failed to include shift differentials or other non-discretionary remuneration paid to Plaintiff and the CSRs in calculating their correct overtime premiums as required by the FLSA 29 C.F.R. §§ 778.108-109.   Instead, Defendant only paid Plaintiff and the CSRs an overtime premium calculated from their base hourly rates.

12.    Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her

unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

13.     At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

16.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise

basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

17.    This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Florida, employs individuals within the state of Florida, is registered with the Florida Office of the Secretary of State, and maintains its principal place of business in the state of Florida.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs CSRs in this district, conducts business in this district, and a substantial portion of the events that give rise to Plaintiff's clams occurred in this district.

19.    A substantial part of the events or omissions which give rise to the claims occurred in Pinellas County, and therefore pursuant to L.R. 1.04, this action is properly assigned to the Tampa Division.

## PARTIES

20.    Plaintiff Theresa LoBello is a resident of Smithville, Tennessee and worked for Defendant as an hourly, non-exempt remote CSR from approximately September 2018 through June 2023.  Defendant compensated Plaintiff through the payment of a base hourly rate, most recently $16.00 per hour. Plaintiff Lobello

6

signed a consent to join this collective action, which is attached as **Exhibit A**.

21.     Defendant HSNi, LLC. is a Delaware limited liability company headquartered in St. Petersburg, Florida. In the state of Florida, Defendant has a registered agent for service of process listed as Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525.

## GENERAL ALLEGATIONS

22.     Defendant paid its CSRs at varying hourly rates.

23.     In addition to the base rate of pay, Defendant incorporates various shift premium payments into its payroll structure.

24.     Defendant's CSRs typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

25.     While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

26.     Prior to being hired, CSRs received an offer from Defendant that set forth the requirements of a CSR, the job duties, and the offered rate of pay.

27.     Defendant maintains documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or

other payroll records.

28.     Plaintiff received such an offer from Defendant to serve as a CSR, and she accepted Defendant's offer with the understanding that her base wage rate, most recently $16.00 per hour, would be paid as promised.

29.     Throughout Plaintiff's employment with Defendant, Plaintiff also earned a shift differential of $0.75 per hour, weekend shift differential of $1.00 per hour, and a $5.00 Seasonal Peak OT Premium.

30.     Plaintiff performed under the contract by carrying out her job duties and responsibilities. More specifically, Plaintiff handled customer service inquiries and problems regarding their payments and purchases. The aforementioned customer service was provided via inbound calls and Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

31.     Defendant provided all CSRs, like Plaintiff, with, *inter alia*, training on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality

expectations; and Defendant's policies related to each topic. The training Defendant's CSRs received was substantially, if not entirely, the same and all CSRs were subject to the same and/or substantially similar policies.

32.     At all relevant times, Defendant controlled Plaintiff and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

33.     In order to perform their job duties, Plaintiff and Defendant's CSRs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

34.     Plaintiff and other similarly situated CSRs were instructed to be call ready the moment their scheduled shift started, yet Defendant prohibited them from clocking in before the start of their shift. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shift began.

35.     Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which it monitored the CSRs' clock in times in relation to their start of shift time, as well as the time the CSRs went into a "ready"

status. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, CSRs. This discipline included, but was not limited to, verbal and written warnings and termination.

36.     Thus, Defendant forced its CSRs to perform the boot-up and login process before the start of their shift and before they were allowed to clock in – no more than five (5) minutes after the start of the scheduled shift.

37.      All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

38.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre- shift work off-the-clock.

39.     The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

40.     As a result of the pre-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately ten (10) to twenty (20) minutes of compensation every day.

41.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with their CSRs.

42.     Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

43.     Despite knowing Plaintiff and all other CSRs performed this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

44.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

45.     Because Defendant required its CSRs, including Plaintiff, to perform

pre-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

46.     As non-exempt employees, Defendant's hourly employees were entitled to full compensation for all overtime worked at a rate of 1.5 times their "regular rate" of pay.

47.     However, Defendant failed to take into consideration the hourly shift differential and other non-discretionary remuneration when calculating its hourly employees' regular rates of pay and the resulting overtime rate premium.  As such Defendant, did not pay the proper overtime rate under the law.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

48.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to begin work prior to the start of their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including logging into multiple computer networks, software programs and applications. Defendant's CSRs only received compensation *after* this pre-shift work was completed, though they were required

to perform this work in order to be fully ready to take calls when their scheduled shifts began.

49. The off-the-clock pre-shift process took substantial time on a daily basis, approximately ten (10) to twenty (20) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

a. Turn on their computer;

b. Plug Igel (digital workspace) into their computer, locate the system icon on their desktop and log in with their username and password;

c. To Secure access to Defendant's server after logging into Igel the CSRs received a call where they obtain an access code which they entered into their computer and completed the authentication process allowing them to access the system;

d. Open Outlook;

e. Open Google Chrome and proceed to open the HSNi website (customers often refer to it when they call in);

f. Open USPS and UPS – the application used to assist customers with issues with shipping and tracking packages;

g. Open HSNi Program Guide (i.e., what is running on the network, etc.);

h. Open and log into Jabber (phone system) using a username and password;

i. Open Defendant's timekeeping system;

j.  Open Click – the program containing Defendant's database; and

k.  Clock in and go into "Auto-In" status and start taking calls.

50.    Defendant's CSRs were required to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs were required to arrive to work and begin working approximately ten (10) to twenty (20) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

51.    Defendant's CSRs were not compensated for all of this time because Defendant prohibited CSRs from clocking into its timekeeping software until the moment their scheduled shift began.  To the extent CSRs had a grace period, they were allotted five (5) minutes after the start of their scheduled shift, which was to be used for reading emails, where they did not have to be taking calls.

52.    The pre-shift off-the-clock work CSRs performed directly benefited Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

**B.  Defendant's Regular Rate Violations**

53.    Defendant paid Plaintiff an hourly wage, plus shift differentials and other non-discretionary remuneration.  *See e.g.*, **Exhibit B**, LoBello Exemplary Pay

Statement.

54.     During the applicable statutory period, Plaintiff's base hourly rate ranged between $15.00 and $16.00.

55.     As an hourly employee Plaintiff also earned an hourly shift differential of approximately $0.75 per hour, weekend shift differential of approximately $1.00 per hour, and Seasonal Peak OT Premium of approximately $5.00. *Id*.

56.     Under the FLSA, the "regular rate" at which an employee must be paid includes "***all remuneration*** for employment paid to, or on behalf of, the employee," divided by the hours worked in a workweek.  29 U.S.C. § 207(e) (emphasis added).

57.     Additionally, under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate.  *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal non-overtime workweek for which he is employed."  29 C.F.R. § 778.108.

58.     No matter how an employee is paid – whether by the hour, by the piece, on a commission, or on a salary – the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be

calculated.  29 C.F.R. § 778.109.  "The regular hourly rate of pay is determined by dividing the employee's total remuneration of employment (except for statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

59.     Defendant's hourly shift differentials and other non-discretionary remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

60.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  The defendant carries the burden that any payment should be excluded.  *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000). Thus, determining the regular rate starts from the premise that all payments made to Defendant's hourly employees for work performed shall be included in the base calculation unless specifically excluded by statute.

61.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime

requirements in terms of hourly wages.  Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

62.    Plaintiff's "total remuneration" included not only her hourly pay but also the non-discretionary remuneration and the hourly shift premiums.  Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…"; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials ….").

63.    For example, Plaintiff's Exemplary Pay Statement dated 7/1/2022 shows a base hourly rate of $15.00.  It also shows an overtime rate of $15.00 and $7.56, which is 1.5 times the base hourly rate.  On this pay statement, Plaintiff also earned $0.75 per hour and $5.00 in hourly shift premium compensation.  However, Plaintiff's overtime rate does not account for the hourly shift premium compensation and, therefore, results in a FLSA violation.

64.    Consistent with Section 7(a) of the FLSA, Plaintiff and those similarly

situated are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

65.     Plaintiff and those similarly situated have regularly worked in excess of 40 hours a week and were paid overtime for those hours, but at a rate that does not include Defendant's hourly shift premium compensation and other remuneration as required by FLSA.

66.     To the extent that any of Defendant's premium compensation paid to Plaintiff, and those similarly situated, could be qualified and applied as a credit under 29 U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc.*, 308 F. 3d 580, 590-92 (6th Cir. 2002).

67.     In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (flsa), 1985 WL 304329 at 3 (1985).

68.     Defendant violated the FLSA's overtime provisions, 29 U.S.C. § 207, by systematically failing to include all remuneration in Plaintiff's regular rate of pay when computing overtime pay (including, but not limited to, in connection with its payment of shift differentials).

## C. The Off-the-Clock Work Results in Viable "Gap Time Claims

69.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

70.     Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

71.      During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

72.     In approximately September 2018, Defendant offered Plaintiff the opportunity to work for Defendant as an hourly customer service representative.

73.     In consideration of Plaintiff's work as a CSR, Defendant promised to pay Plaintiff an hourly wage for each hour she worked.

74.     In approximately September 2018, Plaintiff accepted Defendant's offer of employment and began working for Defendant, creating a valid agreement between Defendant and Plaintiff whereby Defendant was obligated to pay Plaintiff her agreed hourly rate of pay for each hour that she worked for Defendant, including the compensable off-the-clock pre-shift activities described herein.

75.     Throughout her employment with Defendant as a CSR Plaintiff performed all of the work required by Defendant, including the off-the-clock pre-shift activities described herein. In performing this work, Plaintiff fulfilled all of her duties under the agreement.

76.     However, throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached the agreement by not paying Plaintiff her regular hourly rate of pay for the pre-shift activities described herein.

77.     Defendant's failure to pay Plaintiff for each hour of work she performed and that was required of her as a CSR was a material breach by Defendant.

78.     Because of Defendant's breaches, Plaintiff was deprived of wages owed to her under the agreement, including unpaid "gap time" wages.

79.     Upon information and belief, all of the other CSRs who worked for Defendant had a similar valid agreement with Defendant.

80.     Upon information and belief, Defendant repeatedly and systematically breached its agreements with all the other CSRs it employed in the same way it breached its agreement with Plaintiff.

81.     Defendant's promises to pay Plaintiff's and the CSRs' applicable hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to Plaintiff and the CSRs.

82.     Plaintiff and the CSRs are owed wages at their agreed hourly wage rates for the time that they worked off the clock during their employment with Defendant, including unpaid "gap time" wages.

83.     Plaintiff and the CSRs earned these wages at the moment they performed the off-the-clock work; and the wages were due to be paid to Plaintiff

and the CSRs no later than the pay day for the period in which the off-the-clock work was performed.

84.     Despite the fact that Plaintiff and the CSRs performed the off-the-clock work before their scheduled shifts, these off-the-clock hours were not peripheral or collateral tasks for which they were owed no additional compensation. Instead, the off-the-clock work, which was performed by Plaintiff and the CSRs pursuant to Defendant's express instructions, constituted principal work activities that were integral and indispensable to their assigned work; and Defendant was obligated to pay Plaintiff and the CSRs for this time at the regular hourly rates at which they were employed.

85.     The fact that Defendant deliberately chose not to compensate Plaintiff and the CSRs for this work, and that the off-the-clock work was performed before Plaintiff's and the CSRs' scheduled shifts, does not somehow relieve Defendant of its obligations to pay Plaintiff and the CSRs for this time.

86.     Defendant was obligated to pay Plaintiff and the CSRs their regular rates of pay for *all hours worked*, including hours worked before their scheduled work shifts.

D. **Plaintiff's Exemplary Workweek**

87.     Defendant paid its CSRs on a biweekly basis.  The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of June 12, 2022 – June 25, 2022:

- Plaintiff worked less than 40 hours in one week at a rate of $15.00 per hour and upon information and belief was paid $15.00 for each regular hour worked.

- With pre-shift off-the-clock work, Plaintiff should have been paid an additional 10 to 20 minutes or more at her regular rate of $15.00 for each regular hour worked.

- Plaintiff worked more than 40 hours in one week at a rate of $15.00 per hour and upon information and belief was paid $22.56 per hour in overtime.

- With pre-shift off-the-clock work, Plaintiff should have been paid an additional 10 to 20 minutes or more at her overtime rate of $22.56 for each hour worked in excess of 40 in the overtime workweek.

**Exhibit B**, LoBello Exemplary Pay Statement

E.  **Defendant Benefitted from the Uncompensated Off-the-Clock Work**

88.     At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiff and all other CSRs in connection with pre-shift activities described above.

89.     At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

90.     At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed.

91.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other CSRs in order to pressure them into performing pre-shift work off-the-clock.

92.     Defendant expressly trained and instructed Plaintiff and all other CSRs to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

93.     Defendant instructed CSRs to have all work applications and systems

fully loaded before the start of their shifts, which takes them in the range of ten (10) to twenty (20) minutes per day.

94.     At all relevant times, Defendant's policies and practices deprived Plaintiff and the CSRs of wages owed for off-the-clock pre-shift activities they performed.  Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

95.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the CSRs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

96.     Defendant has known or should have known that the time spent by Plaintiff and the CSRs in connection with the off-the-clock pre-shift activities is compensable under the law.  Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it has acted in good faith.

97.     Despite knowing Plaintiff and the CSRs performed off-the-clock work before their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

98.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff and the CSRs at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable because Plaintiff and the CSRs worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

99.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

100.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

101.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

102.    Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime

compensation for all hours worked in workweeks during which they worked forty (40) hours or more or close to forty (40) hours when considering the uncompensated off-the-clock work discussed herein.

103.   All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

104.   Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and at the correct overtime premium for all hours worked in excess of forty (40) per workweek.

105.   As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

  a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

  b.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

      c.  Willfully failing to include shift differentials and other non-discretionary remuneration into the required regular rate calculation; and

      d.  Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

106. Defendant's unlawful conduct has been widespread, repeated, and consistent.

107. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

108. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are 1) required to work without compensation due to uncompensated boot-up time; and 2) entitled to their

regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

109.    Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

110.    The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

111.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

112.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

113.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

c.    Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

114.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll

policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

115.   Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

116.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

117.   This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

118.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

119.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

120.    Plaintiff incorporates the foregoing paragraphs 1-110 as if fully restated herein.

121.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq.*

122.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

123.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

124.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

125.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

126.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

127.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

128.    The FLSA and its attendant regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments may not be included in the regular rate.  Defendant's hourly shift

premiums and other non-discretionary remuneration do not fall into any of those exceptions.

129.    Defendant failed to include hourly shift premium compensation and other non-discretionary remuneration and into the regular rate of pay for Plaintiff and the FLSA Collective when calculating overtime rates.  The failure to include this remuneration in overtime compensation violates Section 7(a) of the FLSA because Plaintiff and the FLSA Collective were working overtime without being paid the statutorily required rates.  29 U.S.C § 207(a).

130.    At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and the FLSA Collective the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

131.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

132.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the FLSA Collective members to

perform pre-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

133.    The off-the-clock work performed every shift by Plaintiff and the FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was not significant.

134.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

135.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

136.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective members for all work activities, but did not.

137.    As a result of Defendant's willful failure to compensate Plaintiff and the FLSA Collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant has violated and continues to violate the FLSA 29 U.S.C §§201 *et seq.*, including 29 U.S.C §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104.

138.    As a result of Defendant's FLSA violations, Plaintiff and the FLSA Collective members are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received during the relevant time period and any overtime they did receive during that same time period.  The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

139.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief, on behalf of herself and the FLSA Collective, against Defendant including unpaid wages (including unpaid overtime), an additional equal amount

in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

140.    Plaintiff incorporates the foregoing paragraphs 1-47, 69-86, 88-98, and 111-119 as if fully restated herein.

141.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

142.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff and the Rule 23 Nationwide Class members accepted and performed, but Defendant failed to perform by failing to paying Plaintiff and the Rule 23 Nationwide Class members the promised wages.

143.    For example, Defendant offered to compensate Plaintiff at a minimum

of $16.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties in reliance on the offer.

144.    Defendant breached its contractual promises by failing to pay Plaintiff and the Rule 23 Nationwide Class members at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

145.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $16.00 per hour within the applicable period.

146.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

147.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide

Class.

148.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

149.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

150.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

151.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

### COUNT III
### RULE 23 NATIONWIDE CLASS ACTION
### UNJUST ENRICHMENT

152.    Plaintiff incorporates the foregoing paragraphs 1-47, 69-86, 88-98, and 111-119 as if fully restated herein.

153.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

154.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

155.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

156.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

157.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

158.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

159.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

160.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

161.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

162.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

    a.   An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b.   An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

    c.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

    d.   An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

    e.   An Order declaring Defendant violated the FLSA;

    f.   An Order declaring Defendant's violations of the FLSA were willful;

    g.   An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such other and further relief as this Court deems appropriate.

Dated: January 3, 2024                    Respectfully Submitted,

_/s/ Bradley W. Butcher_____
Bradley W. Butcher, Esq.
Florida Bar No. 0020045
BUTCHER & ASSOCIATES, P.L.
6830 Porto Fino Circle, Suite 2
Fort Myers, Florida 33912
(239) 322-1650
bwb@b-a-law.com

Jason J. Thompson
Kathryn E. Milz
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

## JURY DEMAND

Plaintiff, Theresa LoBello, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 3, 2024   Respectfully Submitted,

*/s/ Bradley W. Butcher*
Bradley W. Butcher, Esq.
Florida Bar No. 0020045
BUTCHER & ASSOCIATES, P.L.
6830 Porto Fino Circle, Suite 2
Fort Myers, Florida 33912
(239) 322-1650
bwb@b-a-law.com

Jason J. Thompson (P47184)
Kathryn E. Milz (IL ARDC 6297213)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*